Good morning, Your Honors. May it please the Court, my name is Max Fischer, and I represent the appellants in this appeal. If it pleases the Court, I'd like to reserve four minutes for my rebuttal. Your Honors, the present dispute involves one between two competitive local exchange companies over the compensation allegedly due for interstate telecommunications traffic. In this particular case, Pac-West, one of the defendants, filed a state law complaint with a state administrative agency, California Public Utilities Commission, seeking compensation under a state law tariff. The traffic at issue, as I mentioned, is indisputably interstate telecommunications traffic. Seven years ago, this Court held in Pacific Bell v. Pac-West that the CPUC had no authority under Sections 251 or 252 of the 1996 Telecommunications Act to promulgate generic orders that were to apply to interstate telecommunications to the same interstate telecommunications traffic at issue in this appeal. Is this a generic order, or was this the tariff submitted by Pac-West? The release of a specific – I know it was not an interconnection agreement, but I thought it was Pac-West specific. That's correct, Your Honor. Why is that governed by Pac-Bell? This case is governed by Pac-Bell because Pac-Bell held that the CPUC exceeded its authority because it stepped outside the very confined role that this Court defined for it, which is namely – which is the role that Congress defined for it, namely the role of acting as either a mediator or an arbitrator pursuant to Section 252. The CPUC had no more authority to issue the relief in this case. Well, I've been sort of struggling with that, and I don't – 251, what is it, D3, seems to contemplate a role for State courts other than that – for State commissions in addition to the interconnection agreement, no? That's correct, Your Honor, but only with respect to intrastate matters. It doesn't say that. That's how this Court read 251, D3, and Pacific Bell, which is the – Well, it said they couldn't issue generic orders, but this wasn't a generic order. That's correct, Your Honor, but – but – So how does it apply? Beg your pardon? So how does Pac-Bell apply? Pac-Bell applies – Pac-Bell actually referenced the same section that Your Honor just referenced, 251, D3. And to be clear, 251, D3 is the only authority that the California Public Utilities Commission has asserted as the – as a potential basis to regulate intrastate telecommunications traffic. And what this Court held in Pacific Bell was that 251, D3 and similar provisions were, quote, best interpreted as indicating that State regulatory commissions may continue to regulate aspects of intrastate telecommunications services as long as the State requirements were not inconsistent with the – What are you reading? Your own notes? I'm sorry. This is page 128 of the Court's decision. Thank you, Your Honor. Incidentally, the limitation on 251, D3 is consistent with the FCC's own interpretation of that section. The FCC in local competition order – in its local competition order, excuse me – at paragraph 98 states that  we conclude that State access and interconnection obligations referenced in 251, D3 fall within the scope of section 261C. 261C of the Telecommunications Act specifically limits States – it specifically references powers – State powers, excuse me – that are over intrastate telecommunications. You don't think you're somewhat exaggerating the force of what this Court decided back in Hack West? It seems to me your argument means that for seven years now, the CPUC and others have been operating on a non-awareness that they had no jurisdiction. Your Honor, it's our view that this should come as no surprise in light of the Court's ruling in the Pacific Bell. The thrust of that decision is that a State commission may only exercise powers over interstate traffic pursuant to section 252. Here, indisputably, there was no 252 dispute. And it's been suggested that this – your jurisdiction argument was not one that you pressed until applying for rehearing. Before the commission, Your Honor? The question is whether you hadn't really waived the issue of jurisdiction by going to the merits, talking about any preemption terms. Let me address that head-on, Your Honor. The decision at pages 27 and 28 – this is the CPUC's decision – notes that AT&T challenged its authority to impose regulations on this type of interstate traffic. It even references what it calls AT&T's jurisdictional argument. In addition, the – it is clear, PAC-West noted in its opposition to our petition for rehearing before the CPUC that AT&T raised the jurisdictional point. But I think, ultimately, it's not a point that's dispositive in this particular appeal, because this Court held in Pacific Bell that, to the extent there could be any sort of waiver, which I think – I don't think is actually possible, but to the extent that there could be some sort of waiver of a jurisdictional argument before a State commission under these contexts, this Court in Pacific Bell held that it was sufficient to raise it in the petition for rehearing, which at a minimum, if you don't agree with Appellant's interpretation of the decision, at a minimum, it's clear we raised it in the petition for rehearing. Pacific Bell – Under your understanding of the jurisdictional structure, could the FCC authorize State commissions to make certain determinations? Not outside the context of section – with respect to interstate traffic, Your Honor. Not outside of 252. With respect to interstate telecommunications traffic, that's correct, Your Honor. That's the limitation on State authority in terms of the act is set up, the act does two things. I'm having a lot of trouble knowing where that comes from, because it's not in 251. 251 does not say. It seems to have – and there are other statements by the FCC that say that there is parallel jurisdiction. And why – where are you getting that from? I understand – I understand you're reading Packbell that way. But aside from reading Packbell that way, where would it come from? It comes from – in terms of the limitation cabining their role in 252, Your Honor, is that what you're asking? In terms of the reading of 251, which recognizes a role for State commissions, that that role is limited to interstate activity. It comes from, as I quoted, from the FCC's own opinion in the local competition report. No. But in the statute, where would you get it from? In terms of the statute itself, the only other discussion of it, I believe, is at 261C. But, Your Honor, if Your Honor's point is that 251d3 does not specifically mention a limitation – Nothing in 251 does, not just 251d3. Nothing in 251 seems to be limited to interstate traffic. We would agree with that, Your Honor. The 251 sets forth all types of obligations that are incumbent upon local carriers and carriers generally. But the – in terms of what powers the State commission has, those are enumerated in Section 252 of the Act. All that 251 does and 251d3 does, it's not – it can't be read to be a grant of authority. It simply instructs the FCC, the Federal – the commission referenced there is the FCC. It simply instructs the commission not to attempt to preempt any State regulation with respect to intrastate matters. But that's Senate. That's – that's how we believe it. All right. Okay. Are you going to go on to the remand order and so on? Thank you, Your Honor. With respect to – and just to make sure that our argument is clear, we think of the argument that the Court has just considered, namely the jurisdictional point, is dispositive of the entire matter, that there was no jurisdiction. The CPUC's decision was thus void of an issue. But even assuming that the CPUC had jurisdiction to adjudicate a dispute over interstate traffic outside the 252 context, it reached the wrong conclusion here. The conclusion that the CPUC reached, which the district court deferred to, was one that conflicts with Federal law. The reason that we say that is there are two primary reasons why we think that the CPUC reached the wrong conclusion. The first is that they perceive there to be some ambiguity in whether or not the ISP remand order, which sets forth the applicable rate plan here. Can I just cut through some of this? Sure. I understand your argument with respect to the new market rule. What is your position after that? In 2004, the new market rule is gone. Then what? At that point, Your Honor, it would be – it would be simply the rate cap plan. And so you think the rate cap would apply. But the mirroring rule, which was sort of the – enacted with it, couldn't apply, because it only applies to incumbent LECs, right? That's correct, Your Honor. But you think the rates would apply anyway? That's right.  So that you would have paid essentially nothing for the period until 2004 and at the rate cap rate after that? That would – that's correct, Your Honor. That would be consistent with the FCC's own implementation of the ISP remand order, which was to leave in place a bill and keep provision until it granted forbearance in the core order. But the forbearance was in 2004, right? That's correct, Your Honor. And after that, you acknowledge that you would at least pay at the rate. That's correct. That's correct. The other thing – the other – the other point to make here is, again, I think the record's very clear that the FCC was embracing both ILAC and CLEC relationships not only because it was using – I'm sorry. The FCC was embracing CLEC and CLEC relationships in connection with the ISP remand order. Not only because it was using a defined term, carriers. When you look at the language of paragraphs 81 and 82, it uses the term carriers. That's a defined term under the communications laws. Carriers being a broad term to apply to anybody who's exchanging traffic. Not only is the order clear for that reason, it's also clear that the FCC was embracing this relationship when one looks at the declaratory ruling, and in particular footnote 1 of the declaratory ruling, where it notes that the question presented in that case sometimes has been posed more narrowly, i.e., whether an incumbent LEC must pay reciprocal compensation to a competitive LEC that delivers incumbent LEC-originated traffic to ISPs. Because the pertinent provisions of the 96 Act pertains to all LECs, we examine this issue in the broader context. We suggest, Your Honors, that that gives a clear indication that the FCC was interested in embarking on its journey to regulate ISP-bound traffic, that it was going to do so with respect to both CLEC to CLEC as well as ILAC to CLEC relationships. So insofar as there's discussions in the various FCC orders that do specifically apply to ILECs as you would say that they're essentially four examples, or they are pertinent to the ILECs, and if the limitation is mentioned, then it applies to everybody. That's exactly right, Your Honor. And that's consistent with the 1996 Act, which sets out some requirements that apply to all carriers, some requirements that apply to all LECs, and then specific requirements that apply only to ILECs. Which ones apply only to ILECs? I beg your pardon, Your Honor? Which ones in the statute apply only to ILECs? The one of the one of the I believe there are there are multiple. Well, I guess the obligation to enter into agreements. That's exactly right, Your Honor. That would be one of the main ones. Is that the obligation to enter into an interconnection agreement is only, is only one that Congress sought to impose upon an ILEC. Your Honors, unless the Court has any further questions at this point, I'll reserve the balance of my time for rebuttal. The balance of your time is 28 seconds. It may matter. You never know. Thank you, Your Honor. Good morning. May it please the Court, my name is Chris Witteman. I represent the California Public Utilities Commission. I know my time is short. I'm sharing our 15 minutes with Counsel for PAC West. So I'd like to make a couple of short points in response to AT&T's points and some not in response. As to Judge Berzon's questions about the Commission's role being confined only to interstate or only to intrastate matters and the query where would that limitation come from, I think that the best place to look is the FCC's contemporaneous statement right after the 96 Act came out, which was the 96 local competition order. And there it said in multiple paragraphs, the Act created parallel jurisdiction for the Commission and the States over interstate and intrastate matters under Sections 251 and 252. So what about our opinion in PAC Bell v. PAC West? I think that Your Honor was correct in suggesting that the language, the off-cited language from PAC Bell v. PAC West came in the context of a general order that the FCC's that the, excuse me, that the California Public Utilities Commission tried to insert into all interconnection agreements. And as to that, then this Court said we had gone too far. But in that year But there are broader statements that could certainly be read the way they're being read by AT&T. Do you agree with that? There is the broad statement that, let me get the exact statement here. It's clear from the structure of the Act that the authority granted to State regulatory commissions is confined to the role described in 252, that of arbitrating, approving, and enforcing interconnection agreements. Right. And in fact, if you look at Section 252, that statement is, even that statement is arguably wrong in that it goes too far. There is some significant conflict among the circuits and among parties litigating these issues as to whether State commissions have any jurisdiction to enforce, even enforce, an interconnection agreement after they have arbitrated it. Or whether the parties then are to be shunted off to superior court or Federal court. And this Do we need to reach this jurisdictional question? I mean, we would need to reach it. Well, put it another way. I guess we'd need to reach it for you to win, but not for you to lose. Is that right? That, I'm guessing, would be a fair statement. We believe that the subject matter jurisdiction argument is really just the preemption argument coming back in a different costume, if you will. The AT&T But isn't it an argument that AT&T is entitled to make? Certainly, Your Honor. And it may well be the case that it was not waived, and we did not mean to suggest that it was waived. But if we otherwise agreed with AT&T, we wouldn't need to reach this. If we agreed that the FCC's remand orders covered this, then that would certainly prevail over any jurisdiction that might exist in a vacuum. That's a tough question, and it would send me back to my con law and civil procedure classes many years ago. I don't think they taught this sort of thing many years ago. But not only that, the FCC remand order specifically says that it's preclusive as to anything it applies to. And 251, the section of 251 that you'd have to rely on also says it can't conflict with anything done by the FCC. So if the FCC remand order covers this, the jurisdictional issue doesn't matter. Well, the way I understand it, Your Honor, jurisdiction, the subject matter of jurisdiction would have prevented us from doing anything. We would have just said, no, we can't touch this. But if you're precluded from doing anything anyway because of the FCC's orders, then whether you would have been precluded in the absence of the FCC's orders doesn't matter. The AT&T's answer, in fact, requests that we apply the ISP remand order and that they be awarded fees and so forth. So they are requesting that we affirmatively step up to the plate. Preemption arguments, by their nature, suggest that the tribunal has jurisdiction but is preempted from exercising it in this way or that way. So I think that we get beyond the question of whether we had jurisdiction, not to mention the fact that this traffic was mixed. There was a stipulation that the traffic was ISP bound, but that stipulation was to put on the table the preemption arguments, the ISP remand arguments. If you go back to the record, you see that PacWest, in any event, argued that there were many types of traffic here, BNXX, paging companies, other large companies, traffic directed towards them. And, in fact, AT&T's answer, if I recall correctly, says most of the traffic is ISP bound. Excuse me a minute. How much time are you leaving for your other counsel on your side? I will close with just one point. I don't mean to cut you off. I didn't know what your arrangement was. They get half, and you do need to hear from counsel from PacWest. They've been at this much longer than I have. I would simply suggest that if we accept AT&T's position here, there is no remedy. AT&T specifically wanted PacWest to carry this traffic for free. That's the upside of it. But they're not saying that after 2004 they agree they have to pay the traffic. I just heard that for the first time, Your Honor. Thank you. Good morning, Your Honor. My name is Jim Tobin, representing PacWest. I'm happy to accept my 50%. I'd like to address, at the outset, perhaps a bigger picture issue than some of the details that have been raised in this case. AT&T starts from a premise that the traffic is interstate. The fact of the matter is that all of the calls that are the subject matter of this particular case were calls that were dialed from one California telephone number to another California telephone number. Pardon me? It's not going to be very helpful to us for you to start contesting that. Are you now contesting that proposition by the FCC? No. We're not contesting its ISP-bound traffic for purposes of arguing whether the 2001 ISP-bound traffic has been declared by the FCC to be interstate traffic? That is correct. All right. So why are we talking about it? So the issue is whether the FCC, having found it to be within their jurisdiction to regulate ISP-bound traffic, has in fact done so with respect to ISP-bound traffic that's exchanged between two CLECs. The difference between a CLEC and an ILEC is not a hair-splitting exercise. It's fundamental to the structure of the 96 Act, which enacted materially different obligations and rights between these types of telephone companies. But the reciprocity provision isn't limited to ILECs, and the problem that's created, therefore, isn't limited either. I would agree with that. All right. I don't think we're contesting whether or not ISP-bound traffic can be rightly considered interstate. This is a preemption case. It's not a case, I don't think, about CLEC business plans or the like. It's about whether the FCC preempted the field or the action taken by the PUC in the absence of such field-preempting FCC action contradicts or impedes the Federal law. But ultimately, what we're talking about is whether these orders mean to apply to this interaction between these two, which I'm calling CLECs, whatever you're calling them. Okay? That's the bottom line issue. All right. And what evidence is there? The statute seems to say LEC when it means general and ILEC when it means the ILECs in particular, and the FCC said at the beginning in the declaratory order that we're not going to be we've been asked to be limited to ILECs, but we're not going to do that. And then all the way through this whole sequence of orders, they use two terms. Sometimes they use LEC, which is most of the time, and occasionally, and mainly when they're dealing with things that have to do with interconnect orders or mandatory interconnect orders that we know only apply to ILECs, they talk about ILECs. It doesn't seem to me, except by ignoring the language about the statute of the orders, that you can get where you want to go. I guess what I would urge the Court to do is read the remand order not sentence by sentence, each sentence isolated, but to read the order as a whole and in the context as well of the statutory scheme that has been created by the act under which it was promulgated. When you say as a whole, it's a pretty big order. Have you got any suggestions as to what we should specifically look at? I think we have pointed out in our briefs numerous instances where the FCC stated explicit triggering conditions for the application of the rate plan that it adopted in that order. If I could back up one step, the problem presented to the FCC was presented by ILECs, who at that time had 90-something percent of the residential customers in California that were making these telephone calls to their ISPs and nationwide. The problem was that the ILECs were suffering what they claimed to be excessive payments. No CLEC came to the FCC and ever said, you know, we're having to pay too much to some other CLEC. That was not a problem in front of the FCC. Just like the discussion you just held about the Pac-Bell-Pac-West case in the circuit, the problem in front of this Court at that time wasn't a, what we characterize, I believe correctly here, as a 251 case outside of the context of Section 252. You were looking at a case there which involved an ILEC and a CLEC having gone through the process of arbitration that was set forth in 252 and a situation in one half of the case where the California Commission said, with respect to that group of carriers, we're going to have a general rulemaking and impose a requirement on all carriers that infringes on the rights of many carriers to implement a section 252 arbitration to litigate that specific point in their specific agreement. Generalities. But the problem, although the problem at that time was being presented by the ILECs because they're the ones who were providing the service, the problem is the same problem, right, which is that you can have CLECs come in and serve only ISPs and not pay anybody anything. The problem is conceptually the same problem. The problem as a practical and monetary and governmentally significant problem is completely different. Because? Because of the magnitude of the issue presented and where, and the context in which the FCC was trying to get a handle on these disparate systems they established over the years for a compensation of different kinds of telephone calls by different kinds of carriers. All right. But you told me to read the remand order all together, and I've now just been reading the part that sets out the problem, and the problem is not set out in a way that's limited. So what should I be reading that shows me that they had something limited in mind? Take a look. As a suggestion, and we have more in our brief, and as does the California Commission, take a look at, I believe it is footnote 9, which lists, which is the only thing in the order that specifies any particular amount of monetary damage being suffered by anyone. And all of the ex parte letters that are discussed there are complaints of ILACs that are having to pay money. The... It all reminds me of something the Supreme Court has said many times. And what I remember the most is in an early RICO case where the argument was made that Congress only had in mind organized crime and nothing else when it enacted RICO, and the answer was, well, that may be what they had in mind, but it's not highly limited to statute, and that's what matters. Why isn't the same thing true here? I think it is, and I think the discussion with AT&T was going down the right track. If you look at 251B and 261B of the Federal Act, neither of those sections preclude the Commission from dealing with this problem if the FCC did not handle it in the ISP remand order. Okay. But I'm asking you why the ISP remand order, which doesn't seem to have the limitations that you're suggesting, even if it is what they had in mind, because that was the problem presented to them, could be limited that way. Yes, I understand your question. Our position on that question is that the FCC's remand order presents an integrated plan for dealing with the generic problem that they identified. It did not deal with all aspects of that problem. There's been several courts that held that contrary to the sort of overly simplistic position of AT&T, that they preempted jurisdiction over all ISP-bound traffic, that, in fact, there have been several categories of ISP-bound traffic which courts of appeal have found, including this one, are not covered by that order. This is the first time that the question of this subset of ISP-bound traffic, i.e., between two competitive local exchange carriers, has come before circuit court. The California Commission and, most recently, the Pennsylvania Public Utilities Commission have both read this same order and made this same conclusion that is consistent with our position, which is, as the district court held it. So is your basic submission that we should read the remand order as limited to ILECs because that was the problem that was presented, not because of anything internal to the order? The first half of your statement I would agree with. The second half is not what I would say. What I would say is that the when read properly in context as an integrated document. I guess I'm asking Judge Pollack's question. What should we be reading that supports your position other than the fact that the letters, that the specific instances they give seem to involve ILEC? But in terms of what the order is, what should we be reading? The order provides, for example, in one of its paragraphs that this rate plan shall only become effective upon the instance of carriers renegotiating or entering into new interconnection agreements. It provides in another paragraph that if a party believes that the presumption of what's an ISP call or what isn't is to be rebutted, a carrier can exercise its rights under Section 252 to go to the State commission. Neither SELEC party in this case has such a right to go before a State commission. There's language, I'm sorry I don't have the paragraph number in front of me, that says these, the rate plan we implement only becomes effective upon new interconnection agreements between carriers and elsewhere in numerous occasions set forth in our briefs basically says that it is in the context of 252 interconnection agreements that this plan will be implemented. In fact, in California that has been the case. The plan is included in, for example, PacWest 252 interconnection agreement with the ILEC affiliate of the defendants, which sets forth how that plan will be implemented as between Pacific Bell and PacWest if Pacific Bell triggers the plan with its making of the mirroring offer required by the plan. Mr. Toedtman, if I may put one more question to you. And I suppose in a sense this is a question both for you and Mr. Fisher. Whichever position this Court adopts as to what the remand order means, I suppose there's a possibility that the FCC was, say, the Ninth Circuit misunderstood our remand order. What we meant back then, and we reaffirm it, is the obverse of whichever side it here. How does that get cleaned up? The FCC has ongoing dockets trying to, that have been going on since actually contemporaneous with its issuance of the ISP remand order, if not before, trying to put together the problem, which is quite proving for them to be quite difficult, of how do we reform how all of these telephone companies pay each other for when they interconnect, as we require them to do, in this new context of an open, competitive marketplace, both locally and, in the old terms, long distance. That problem has been before the Commission most recently as in 2008 there was a, I forget, several hundred page order that the Chairman had. Let me see if I can put the question in focus, and I know that I'm not entitled to hold you any more. Here we have litigation which either leads to the payment of a lot of money or not. If the, if this Court, I hate to suggest it, but if this Court erred in the mind of the FCC, does that upset the result of this adjudication? Because I think we have an odd thing here. We, where would one go to challenge the decision? The Supreme Court on certiorari in a position to say what the FCC meant? This entire field of telecommunications regulation is also subject to legislation, as the 96th Act indicates. That is a highly political process that is already underway in light of the Internet and everything else. So if you want my point. Has the FCC filed amicus briefs on any of these cases? Yes. With the NXS? If we asked them, would they file one? Do you think that's wise that we should ask them? I mean, it's their order that we're construing. We're sort of running around blind. Why don't we ask them? I believe the, I think it was the Eighth Circuit or the First Circuit actually did. And they did file a brief, and it involved a different issue than here, a different subset of this problem. But they filed a brief and said, you know, we really didn't have that problem in mind when. Well, that's not the question. The question is what did they, what does it do, not what did they have in mind? Yes. And the Court held that since they didn't address that problem, the order didn't cover the type of traffic that was being litigated in that case. So that if we did ask the FCC. Pardon me? If we did ask them and they told us, no, that's not what the order means, Ted Pollack says, well, we've got a decision, I would think if we got that response from the FCC, we could consider that a new matter which might testify reconsidering that decision or not, or asking the unbanked court to. But what do you, are you in favor of our asking the FCC? No, I'm not suggesting it. I think that we've. I didn't ask whether you suggested it. We've done what we could do to try and lay the issue out. But you would prefer that we not ask? I think our position is that the, that the matter. You're happy with your position? Yes. You would prefer we not ask the FCC? We would ask you to affirm the district court's reason. Okay. Please answer this question. You would prefer that we not ask the FCC for its position? Is that right? I think I would rather answer that question by saying I'm not suggesting it, but I surely wouldn't oppose it. It's so – I don't know enough about how this Court works in terms of how you would then process a late receipt pleading like that, which we may differ with, et cetera, or agree with, or AT&T may differ with. All right. So you're neutral? Yes. Thank you. Neutral on which side? Neutral on the side of Judge White, Your Honor. Thank you. Do you have a position on whether we should ask the FCC for its – for Anamikis, please? AT&T does not have a position. It would not object in any way if that's what this Court decided to do. However, we would suggest that you, if the Court is going to ask for that guidance, that it ask that guidance on both questions that we presented, the jurisdictional question about whether the CPUC had any business adjudicating this dispute to begin with, as well as the interpretive questions. Sure, we could do that. It would be somewhat more authoritative on the second and not the first. Not necessarily authoritative at all, but it would be somewhat more informative. That's right, Your Honor. As to – in my closing remarks, and I see that my time has expired, if I might just have a moment. Well, we'll give you a minute anyway. Thank you, Your Honor. You asked – you asked the defendants if you resolved the question of what the FCC meant by the – by the remand order, whether it embraced SELEC-to-SELEC relationships. Would that just dispose of the case? And our position would be that, yes, it would, so long as this Court did not rule on the other issue, on the jurisdictional question. If it was silent on that, I suppose it could certainly rule on – alone just on the interpretive part. Well, because, as I understand it, if the FCC has in fact acted, and if the CPUC's order is inconsistent with that, then it couldn't do it anyway, so whether it would have jurisdiction in the abstract wouldn't matter. That's right, Your Honor. That's absolutely correct. But to the extent it was – you would be – the panel would be inclined to reach the question of jurisdiction. That's obviously a critically important one to AT&T and one that the district court completely skipped over in its opinion below. Lastly, I would just add that in terms of reading the – to the extent it's not going to seek the guidance from the FCC as it – as it peruses the ISP remand order to not lose sight of footnote 1 of the declaratory order, which we believe specifically rejects the notion that PacWest asserted, that somehow the FCC was limited – limiting its – its investigation into solely ILEX. So what do you do with the pieces of the remand order and the later orders, which do at some junctures turn on the existence of a – of a interconnect agreement? Those – those provisions of the remand order certainly – they exist specifically to deal with ILEX-specific issues, such as the market power that ILEX began with in 1996. That's all it meant.  So if there's an – an ICA, then this is what you do. But if there isn't one, then you do something else. Correct. That's exactly what paragraphs 81 and 82 specify.  Thank you very much, Your Honor. Your Honor, to your question about the FCC going in there, the California Public Utilities Commission would fervently support that suggestion. We have asked and filed comments in every inter-area conversations, proceedings, and documents that they have requesting clarification not just of this point but of many of these points. This has been a long process. Since 2001, concurrent with the ISP remand order, they put out a rulemaking asking – trying to develop a unified inter-area regime. And that obviously has not happened yet. So in sum, we would welcome any guidance. Thank you, counsel. The case just argued will be submitted. Thank you all very much for your help. All rise.
judges: Pollak, Reinhardt, Berzon